Filed 5/4/21  P. v. Williams CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B304345 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA099542) |
| v. | |
| TIMOTHY THOMAS WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephen A. Marcus, Judge.  Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On August 6, 1996, a jury convicted defendant and appellant Timothy Thomas Williams of first degree murder (Pen. Code, § 187, subd. (a); count 1)[1] with a robbery-murder special circumstance finding (§ 190.2, subd. (a)(17)), robbery (§ 211; count 2), assault with a firearm (§ 245, subd. (a)(2); count 3), and conspiracy to commit robbery (§ 182, subd. (a)(1); count 13). As to counts 1 through 3, the jury also found principal firearm use allegations to be true. (§ 12022, subd. (a)(1).) He was sentenced to life without the possibility of parole plus 10 years four months. On direct appeal, we modified defendant's sentence to strike a four-month principal armed enhancement attached to count 3 and affirmed the judgment as modified. (*People v. Key* (Aug. 5, 1998, B105415) [nonpub. opn.], at pp. 4, 31 (*Key*).) The abstract of judgment was amended to reflect defendant's new sentence.

On March 18, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. Over the People's opposition, the trial court found that defendant had established a prima facie case and held an evidentiary hearing pursuant to section 1170.95, subdivision (d). Following the presentation of evidence and argument, the trial court denied defendant's petition, finding that (1) he was a direct aider and abettor who had the intent to kill, and (2) he was a major participant in the crimes who acted with reckless indifference to human life.

Defendant timely appealed. On appeal, he argues that the trial court's order denying his section 1170.95 petition must be reversed because (1) the trial court failed to apply the correct legal standard requiring that the prosecutor prove beyond a reasonable doubt the elements of murder under the current law;

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

and (2) there is insufficient evidence that he either aided and abetted with intent to kill or was a major participant who acted with reckless indifference to human life.  We are not convinced by defendant's arguments.  Accordingly, we affirm the trial court's order.

## FACTUAL BACKGROUND

"On the morning of July 20, 1994, [Sonja] Key, [defendant], [Zoelee] Isaac, and one other man entered Home Bank.  They were all armed.[2]  Key was wearing a wig.  [Defendant], dressed in what appeared to be a brown United Parcel Service uniform, approached the bank guard Juan Corona.  An argument and struggle for Corona's gun ensued.  Key walked over to the two men.  She began to struggle with Corona.  She said, 'Get him off me or I'll pop him.'  Key shot Corona in the neck, and he subsequently bled to death.  Key ordered everyone in the bank to the floor.  Isaac and the fourth robber brandished their weapons and demanded money.  They demanded that teller Jumpee Sue Martinez and corporate officer Roy Foster give them money from the teller drawers.  They did so.  The robbers took $2,869 in all from unlocked teller stations and then fled in a stolen hot-wired van.  They abandoned the van and were driven off in a Pontiac.  The van contained wigs and a bucket of soapy water." (*Key*, *supra*, B105415, at p. 6.)

Approximately two weeks later, defendant, Isaac, and codefendant Tianay Robinson (Robinson) "were apprehended in a stolen hot-wired van within 200 feet of a Wells Fargo Bank."

---

[2]      At the hearing on defendant's section 1170.95 petition, the parties agreed that the People had conceded at trial that defendant was one of the first robbers to enter the bank and no witness ever stated that he was armed.

3

(*Key*, *supra*, B105415, at p. 7.) Two other codefendants and Key were apprehended in a red Pontiac. "Police, who had been watching defendants' activities, concluded that they were about to rob the bank." (*Ibid*.) Three of the coconspirators were wearing wigs, and four "were all wearing heavy makeup. The police found loaded guns, a laundry basket with plastic trash bag liners filled with water, wigs, a pillowcase, and a police scanner and manual in the vehicles. They also found incriminating evidence in Key's apartment, from which" most (if not all) of the coconspirators had exited just prior to driving to the Wells Fargo Bank. (*Ibid*.)

## PROCEDURAL BACKGROUND

I. *Defendant's section 1170.95 petition*

On March 18, 2019, defendant filed a petition for resentencing and requested that counsel be appointed to represent him during the resentencing process. The trial court appointed counsel and requested briefing on the petition.

II. *The People's opposition*

On July 19, 2019, the People filed an opposition to defendant's petition. The People argued, inter alia, that defendant was not entitled to relief because both the jury at trial and the Court of Appeal on direct appeal found that he was a major participant who acted with reckless indifference to human life.

According to the People, they were "tasked with proving beyond a reasonable doubt that the defendant could have been convicted under a theory of homicide still viable under SB 1437." And, they met their burden of demonstrating that defendant was ineligible for resentencing "beyond a reasonable doubt." In support, they pointed out that defendant played a key role in the

4

sophisticated plan to rob the bank. He was dressed in a brown uniform and immediately attempted to take the security guard's gun. He and the "robbery crew" then "took the bank's money and fled in a stolen van which contained water to mitigate the powder packets that may have been triggered." After they fled the scene, they switched cars.

The People also asserted that defendant had to have been aware of the particular danger of his crime given that his role was to take the security guard by surprise and then take his gun. And, defendant was in a position to facilitate or prevent the murder. He was present at the scene of the crime; Key told him that she was going to kill Corona if someone did not get him off of her; and he did not intervene or render aid to the dying man.

Attached to the opposition, the People provided the trial court with a copy of *Key*, a copy of the jury verdict, and a copy of the jury instructions given at defendant's trial.

III. *Defendant's response*

Through counsel, defendant responded to the People's opposition. Among other things, counsel argued that the People did not meet their burden to prove beyond a reasonable doubt that defendant could be convicted today on a theory of accomplice liability. Specifically, when urging the trial court not to consider *Key*, defense counsel asserted that "the appellate court applied a highly deferential standard and was required to uphold the guilty verdict if possible—which is a completely different standard than this Court must apply when deciding whether to issue an OSC here. Following a guilty verdict, an appellate court reviewing the conviction must view the record in the light most favorable to the judgment. The reviewing court does not determine 'whether it believes that the evidence at trial establishes guilt beyond a

5

reasonable doubt,'" which "is the opposite of what the Court now is bound to use in determining whether to issue an OSC." Citing subdivision (d)(3) of section 1170.95, defense counsel concluded that the People bore "the ultimate burden" of proving defendant ineligible for resentencing "'beyond a reasonable doubt.'"

Counsel went on to argue why the People had not met their burden and why the evidence did not support a finding that he was a major participant who acted with reckless indifference to human life. He did not offer any additional evidence in support of his petition.

IV. *Hearing on defendant's petition and trial court order*

On January 15, 2020, the trial court determined that defendant had set forth a prima facie case for relief because the People had prosecuted him on a felony murder theory. It then proceeded into a hearing on the petition, pursuant to section 1170.95, subdivision (d).

The parties submitted on their briefs and whatever materials had been submitted by the parties to the trial court. Defendant declined an opportunity to testify, no new evidence was presented, and there was no discussion of the burden of proof.

After entertaining oral argument, the trial court denied defendant's section 1170.95 petition. It stated: "[B]ased on his conduct during the Home Bank robbery he was a direct aider and abettor of the robbery who had the intent to kill. [Defendant] entered the bank in disguise, an afro wig, brownish uniform . . . , and the express purpose was to rob the bank. [¶] [Defendant] struggled with the security guard, Corona, and attempted to obtain his gun. Co-defendant Key joined in the struggle with Corona and announced, 'get him off me or I will pop him.' She

6

then drew a semiautomatic handgun from under her sweater and shot Corona.  [¶]  [Defendant] was part of a sophisticated ring of robbers who went around robbing banks and many of the participants in the robbery were armed. . . .  [¶]  [Defendant] exhibited intent to kill by engaging in this violent robbery, by taking on the armed security guard, and by helping Ms. Key, who eventually shot the security guard."  The trial court added:  "You can also infer these are not amateurs or beginners.  I indicated that [defendant's] actions trying to take the gun from Corona facilitated the murder.  I guess that goes to the aiding and abetting."

Regarding whether defendant acted as a major participant with reckless disregard for human life, the trial court found:  "[Defendant] is clearly, based on the facts of this case, a major participant who acted with reckless indifference to life.  The reason that he's a major participant—these come under all the case laws of [(*People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark*)], [*In re Bennett* (2018) 26 Cal.App.5th 1002], [*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*)], that whole line of cases—he was present during the bank robbery and was within a few feet next to the victim when he was shot.  This is not [a] *Banks* situation as petitioner was not a getaway driver or some distance from the actual murder.

"Petitioner was part of this well orchestrated and planned robbery.  The bank robbers were armed.  The reason I say it's 'orchestrated' is, they had a second getaway car, they had water to deal with the dye, they exchanged the getaway cars, they were disguised with wigs, they had soapy water.  They had carried out robberies with a number of people and each played a specific role.

"While it is true that this is the first of a series of robberies that they were involved in, the fact remains that there is some relationship back to this original robbery, because you can see the techniques that were used in the subsequent robberies, and they seem to be all the same.

"This was not a spontaneous robbery; this was a planned robbery. As I just said, the fact that they committed similar robberies after the Home Bank robbery confirms the level of planning by [defendant] and Isaac.[3]

"They had a getaway car. We already said that. They stole the van six days earlier so the van could not be traced. This is all evidence of planning. Both [defendant and Isaac], but specifically [defendant], since we only have [defendant], did nothing to prevent the shooting nor did he help the victim after he was shot.

[¶] . . . [¶]

"Both defendants acted in reckless indifference to human life. They both seemed to have some kind of role in the planning because it was sort of a—it's almost like a football play where everybody has to move in unison, all these people who did the robbery, they had their roles, and they had to fulfill their respective roles.

"You're indicating to me he didn't have a weapon, but the other defendants did have lethal weapons. Defendant had to have an awareness of the danger of robbing a bank during working hours with an armed guard. This is shown circumstantially by the number of robbers, the fact that they

---

[3] Isaac also filed a petition for resentencing at around the same time. His petition was adjudicated and denied separately. His appeal is pending.

were armed." To explain the way it was looking at the fact pattern, the trial court cited *Fernandez v. State* (Fla. 1999) 730 So.2d 277 (*Fernandez*).

The trial court then added: "I also take into—and give a lot of weight to the fact that when Ms. Key made her announcement to everybody in the bank, specifically to her co-defendants, that 'if this person doesn't get off me I'm going to pop him,' and that there was a struggle going on, that [defendant] did nothing to minimize or save or help the guard, and that is a major factor for the court. In my opinion it shows reckless indifference to human life.

"As you know, the standard is the defendant's . . . awareness that his participation in the felony involved a grave risk of death, and also whether a reasonable person, sort of an objective standard, would have reached the same conclusion.

"I am denying the petition."

## DISCUSSION

I. *Relevant law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

In order to obtain resentencing relief, the petitioner must file a facially sufficient section 1170.95 petition and then satisfy two prima facie tests to demonstrate that he potentially qualifies for relief, thereby meriting an evidentiary hearing. (§ 1170.95, subd. (c).)

9

At the evidentiary hearing, the parties may rely upon evidence in the record of conviction or new evidence to demonstrate whether the petitioner is eligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) If the prosecution cannot meet its burden, and the petitioner prevails, he is entitled to vacatur of the murder conviction and resentencing as set forth in section 1170.95, subdivision (e).

II. *The trial court properly denied defendant's petition for resentencing*

The trial court properly denied defendant's petition for resentencing because at the evidentiary hearing, the trial court acted as an independent factfinder and determined, beyond a reasonable doubt, that defendant is guilty of murder under current law.[4] And, the trial court's findings that defendant acted either as a direct aider and abettor with intent or a major participant with reckless indifference to human life are supported by substantial evidence.

    A. <u>The trial court applied the correct legal standard</u>

Urging us to reverse, defendant argues that the trial court failed to employ the correct legal standard requiring the

---

[4] In the respondent's brief, the People argue that we should affirm the trial court's order because he was not entitled to an evidentiary hearing in the first place; according to the People, defendant was ineligible for section 1170.95 relief as a matter of law. We need not decide this issue. As set forth below, the People proved "beyond a reasonable doubt" that defendant was a direct aider and abettor and a major participant in the crime who acted with reckless indifference to human life.

10

prosecution to prove beyond a reasonable doubt the elements of first or second degree murder under current law.

### 1. *The law*

There is currently a split of authority as to whether a trial court may deny a section 1170.95 petition only if it finds the prosecution has proven, beyond a reasonable doubt, that the petitioner is guilty of murder under a still-valid theory. (Compare *People v. Duke* (2020) 55 Cal.App.5th 113, 123 (*Duke*), review granted Jan. 13, 2021, S265309 [holding that the prosecution need only prove "that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder [under current law].  This is essentially identical to the standard of substantial evidence, in which the reviewing court asks "'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt . . . .  [¶]  . . . " [Citation.]'  [Citation]"] with *People v. Lopez* (2020) 56 Cal.App.5th 936, 942 (*Lopez*), review granted Feb. 10, 2021, S265974 [holding that the plain language of section 1170.95 requires "the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility"]; *People v. Rodriguez* (2020) 58 Cal.App.5th 227 (*Rodriguez*), review granted Mar. 10, 2021, S266652 [reaching same result albeit for a different reason]; *People v. Clements* (2021) 60 Cal.App.5th 597, 617–618; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813–814; *People v. Harris* (2021) 60 Cal.App.5th 939, 952; and *People v. Hernandez* (2021) 60 Cal.App.5th 94, 103.)

We find the reasoning in *Lopez*, *Rodriguez*, and like cases persuasive and agree with their conclusion that a trial court must act as an independent factfinder and determine whether the prosecution has established beyond a reasonable doubt that the petitioner is guilty of murder under the law as of January 1, 2019.  (See also *People v. Gentile* (2020) 10 Cal.5th 830, 855 ["section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"].)

> 2. *Analysis*

Here, the trial court did just that.

Before it held the evidentiary hearing, the People filed an opposition to defendant's petition for resentencing, acknowledging its burden to prove defendant's ineligibility "beyond a reasonable doubt."  Defendant's response reinforced this standard.

After reviewing these briefs and listening to oral argument, the trial court found that "based on [defendant's] conduct during the Home Bank robbery [defendant] was a direct aider and abettor of the robbery who had the intent to kill."  Moreover, after summarizing the facts of the crime, the trial court added that defendant "exhibited intent to kill by engaging in this violent robbery, by taking on the armed security guard, and by helping Ms. Key, who eventually shot the security guard."  The trial court continued:  Defendant "is clearly, based on the facts of this case, a major participant who acted with reckless indifference to [human] life [because] he was present during the bank robbery and was within a few feet next to the victim when he was shot," as opposed to acting as a mere getaway driver or in some other

12

minor role. The trial court's detailed statements of what occurred indicate that it acted as an independent factfinder.

Defendant complains that the trial court and parties did not use the phrase "beyond a reasonable doubt" during the section 1170.95, subdivision (d)(3), hearing. But, as set forth above, the parties in their briefs filed with the trial court repeatedly noted that if defendant had set forth a prima facie case for relief and the matter proceeded to a hearing, the prosecution had the burden of proving his ineligibility beyond a reasonable doubt.

In light of these arguments, and the trial court's comment that it had "read the materials presented by both sides," we disagree with defendant's assertion that the trial court employed the incorrect standard of proof.

On appeal, defendant acknowledges that in his response, defense counsel mentioned the beyond a reasonable doubt standard, but asserts that the "primary focus" of the response was to convince the trial court that defendant had set forth a prima facie case for relief. Not so. As summarized above, defense counsel asserted that a prima facie case had been established, and repeatedly argued that the prosecution had to prove ineligibility beyond a reasonable doubt. Moreover, defense counsel never suggested that a standard of proof other than beyond a reasonable doubt applied.

Defendant also asserts that the law regarding the prosecution's burden of proof at a section 1170.95, subdivision (d)(3), hearing was and still is unsettled, and thus it cannot be presumed that the trial court followed the law. In so arguing, defendant notes that the trial court commented that it thought and believed that defendant was a major participant who acted

13

with reckless indifference, not that it so found beyond a reasonable doubt, as required by *Lopez*, *supra*, 56 Cal.App.5th 936 and section 1170.95, subdivision (d)(3). We are not convinced. Defendant has not demonstrated that the trial court misunderstood the law, and it is well-established that we presume that the trial court was aware of and followed the applicable law. (*People v. Coddington* (2000) 23 Cal.4th 529, 644–645, overruled in part on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069 and superseded by statute on other grounds in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1107, fn. 4; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct"]; Evid. Code, § 664.) Although *Duke*, *Lopez*, *Rodriguez*, and its progeny had not yet been issued at the time of the hearing, the trial court's ruling indicates that it properly applied the language of section 1170.95, subdivision (d)(3).

Defendant further contends that the trial court must have applied some standard other than beyond a reasonable doubt because it discussed a Florida case, *Fernandez*, *supra*, 730 So.2d 277. But, the trial court's reference to *Fernandez* does not show that it was applying some standard other than proof beyond a reasonable doubt. Rather, the trial court referred to the facts in *Fernandez* to explain its ruling in this case regarding the elements of a major participant in a felony murder who acted with reckless indifference to life.

Finally, the trial court conducted a detailed analysis using the factors set forth in *Banks*, *supra*, 61 Cal.4th 788 to determine whether defendant was a major participant in the murder and whether he acted with reckless indifference to life. Given the

14

trial court's reasoning, the parties' repeated reference to the beyond a reasonable doubt standard in their briefs, section 1170.95, subdivision (d)(3)'s language expressly including that standard, and the presumption that courts know and apply the law, the trial court here properly applied the law when it denied defendant's petition for resentencing.[5]

B. <u>The trial court's finding that defendant was a major participant who acted with reckless indifference to life is supported by sufficient evidence</u>

Defendant asserts that there is insufficient evidence to show that he was a major participant who acted with reckless indifference to life. We reject this claim. There is substantial evidence that defendant was a major participant in the underlying robbery and acted with reckless indifference to human life. (*Lopez, supra,* 56 Cal.App.5th at pp. 953–954 [even if the independent factfinder standard applies at the evidentiary hearing, the standard of review on appeal is that of substantial evidence].)

        1. *Relevant law*

The special circumstance statute (§ 190.2) contains an actus reus and a mens rea requirement. (*Banks, supra,* 61 Cal.4th at p. 798.) With respect to the required conduct, the defendant must have substantial personal involvement, "greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Id.* at p. 802.) Relevant factors that may be weighed in determining whether an aider and abettor defendant

---

[5]     In light of this conclusion, we need not address defendant's contentions that the trial court's alleged error was structural, requiring reversal per se, or prejudicial.

15

is a major participant include (1) the role the defendant had in planning the criminal enterprise that led to the death; (2) the role the defendant had in supplying or using lethal weapons; (3) the defendant's awareness of particular dangers posed by the nature of the crime, weapons used or past experience or conduct of the other participants; (4) whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder and whether his or her actions or inactions played a role in the death; and (5) what the defendant did after lethal force was used.  (*Clark*, *supra*, 63 Cal.4th at p. 611; *Banks*, *supra*, 61 Cal.4th at p. 803 [no one factor is necessary or determinative].)

With respect to mens rea, *Clark* expounded upon the meaning of "reckless disregard for human life," and set forth a similar nonexclusive list of factors to be used in making this determination, including:  (1) the defendant's knowledge of weapons used in the crime; (2) how those weapons were used; (3) the number of weapons used; (4) the defendant's proximity to the crime; (5) her opportunity to stop the killing or aid the victim[s]; (6) the duration of the crime; (7) the defendant's knowledge of the killer's propensity to kill; and (8) the defendant's efforts, if any, to minimize the possibility of violence during the crime.  (*Clark*, *supra*, 63 Cal.4th at pp. 616–623; see also *In re Scoggins* (2020) 9 Cal.5th 667, 676–677 ["[r]eckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions'"].)

2. *Analysis*

Here, as the trial court concluded,[6] the evidence establishes that defendant was a major participant in the crimes,[7] and he acted with reckless indifference to human life.  The trial court found that defendant was part of a "well[-]orchestrated and planned robbery," noting the following facts:  (1) several of the robbers were armed; (2) they used a stolen van as the initial getaway car, which they abandoned and exchanged for a second getaway car; (3) the robbers, including defendant, used disguises; (4) the van had been stolen six days prior to the robbery, and when it was abandoned, it contained wigs and soapy water typically used by robbers to deal with dye-packs that banks put in stacks of cash; and (5) each robber played a specific role, with defendant trying to disarm the security guard.[8]  (See *Key, supra*, B105415, at p. 6.)

Furthermore, less than two weeks after the Home Bank robbery, defendant was arrested in a hot-wired van within 200 feet of a Wells Fargo Bank with codefendants Robinson and

---

[6]    Notably, in reaching this conclusion, the trial court did not rely upon the misstatement in *Key* that defendant was armed.

[7]    Defendant "does not dispute that he was an active participant."

[8]    Defendant concedes that his role was to disarm the security guard.  He claims that he intended to do so without "resorting to extreme violence and without the use of a gun." There is no evidence that this was his intent, and we cannot reweigh the evidence to support defendant's contention. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055–1056.)  Furthermore, the evidence amply supports the trial court's implicit finding that he knew that violence could occur.

17

Isaac, and three other codefendants, including Key, were arrested in a second vehicle. Several codefendants wore wigs and heavy makeup, and the vehicles contained guns, water, wigs, and a police scanner. (*Key*, *supra*, B105415, at p. 7.) That defendant was involved in a thwarted second bank robbery using many of same techniques as the Home Bank robbery supports the inference that defendant knew of and had a role in planning both robberies.

The evidence also supported the inferences that defendant knew that Corona was armed and knew that at least two of his fellow robbers were armed; thus, as the trial court found, defendant had to have been aware of "the danger of robbing a bank during working hours with an armed guard." From this evidence, a factfinder could reasonably infer defendant's willingness to participate in a killing in order to successfully rob the bank, even if he did not specifically want someone to die during the course of the armed robbery. (*In re Scoggins*, *supra*, 9 Cal.5th at pp. 676–677.)

Moreover, defendant was present at the scene of the killing. He was in a position to facilitate or prevent the actual murder of Corona. In fact, as the trial court found, he initiated the encounter with Corona, which led to his death, by approaching him and struggling with Corona over Corona's gun. Key approached defendant and Corona as they struggled, and Corona tried to grab something from Key. Key yelled, "'Get him off me or I'll pop him.'" (*Key*, *supra*, B105415, at p. 6.) Defendant could have stopped struggling with Corona, or he could have stopped Key from shooting Corona. He did neither.

After Key shot Corona, defendant helped take the money. (*Key*, *supra*, B105415, at p. 6.) He did not assist Corona or call

18

911. (See *Clark*, *supra*, 63 Cal.4th at p. 619 [noting that a defendant present at the scene has the opportunity to assist the victim]; *People v. Gonzalez* (2016) 246 Cal.App.4th 1358, 1385–1386, affirmed in *People v. Gonzalez* (2018) 5 Cal.5th 186; *People v. Proby* (1998) 60 Cal.App.4th 922, 929 [defendant saw wounded victim but did not attempt to assist him or determine whether he was still alive and then took money from a safe]; compare *In re Scoggins*, *supra*, 9 Cal.5th at p. 678 [the defendant was not physically present at the crime scene and not in a position to intervene].)

Taken together, all of this evidence supports the trial court's finding that defendant was a major participant who acted with reckless indifference to life. (*Clark*, *supra*, 63 Cal.4th at pp. 616–623; compare *In re Taylor* (2019) 34 Cal.App.5th 543, 557–558 [insufficient evidence that the defendant acted with reckless indifference to human life when he did not have a gun, he did not supply the shooter with a weapon, it was inconclusive whether he even knew the shooter had a gun, there was no evidence that he planned an armed robbery, and there was no evidence that the robbery was going to become violent].)

Notably, in *Key*, we rejected Isaac's claim that there was insufficient evidence of reckless indifference to life: "Here, the evidence showed that all of the Home Bank robbers were armed, not just the shooter. Key announced that she was going to shoot Corona unless someone 'got him off her.' Isaac did nothing to prevent the shooting. After the shooting, the guard lay on the floor bleeding to death while the robbers gathered up cash before departing the bank. Isaac did nothing to come to his aid." (*Key*, *supra*, B105415, at p. 24.) Defendant joined in this claim, which we rejected for the same reasons. (*Id.* at p. 30.)

19

Based on the foregoing, substantial evidence supports the trial court's finding that defendant was a major participant who acted with reckless indifference to life. (*Clark*, *supra*, 63 Cal.4th at p. 611; *Banks*, *supra*, 61 Cal.4th at p. 803.)

Defendant asserts that his codefendants' use of guns, his failure to prevent the shooting, and his failure to render aid did not elevate the risk to human life beyond that inherent in a garden-variety armed robbery. This argument amounts to nothing more than an impermissible attempt to relitigate the facts. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Because a rational trier of fact could find beyond a reasonable doubt that defendant could be convicted as a major participant to the robbery who acted with reckless indifference to human life, there is no basis to reverse.

C. <u>Sufficient evidence supports the trial court's finding that defendant was an aider and abettor who acted with intent to kill</u>

Alternatively, defendant argues that insufficient evidence supports the trial court's finding that he aided and abetted with intent to kill.[9] Again, we reject this argument because the trial

---

[9] Defendant points out the fact that this theory was not presented to the jury or argued by the People in opposition to defendant's petition. Based upon the appellate record provided to us, we do not know what was argued to the jury, but we do know that the jury was instructed on aiding and abetting. In any event, defendant offers no argument as to why this fact compels reversal. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [it is the duty of the appellant, not the courts, "'by argument and the citation of authorities to show that the claimed error exists.' [Citation.]")

court's finding is supported by substantial evidence. (*Lopez*, *supra*, 56 Cal.App.5th at pp. 953–954.)

### 1. *Relevant law*

Guilt as a direct aider and abettor requires: (1) knowledge of the direct perpetrator's intent to commit the crime; (2) intent to assist in committing the crime; and (3) conduct that in fact assists in committing the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) The defendant must not only know the direct perpetrator's intent, he must share that intent. (*People v. Beeman* (1984) 35 Cal.3d 547, 560; *People v. McCoy, supra*, at p. 1118.)

Senate Bill No. 1437 "did not . . . alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), review granted Mar. 18, 2020, S260598.) "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Ibid*.)

Intent to kill for purposes of murder, also known as express malice, is shown when the assailant either desires the death or knows to a substantial certainty that death will occur. (§ 188, subd. (a)(1); *People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*); *In re M.S.* (2019) 32 Cal.App.5th 1177, 1185.) Evidence of motive, although not required to establish intent to kill, is often probative of intent to kill. (*Smith, supra*, 37 Cal.4th at pp. 740–741.) Intent to kill may be inferred from the defendant's acts and the circumstances of the crime. (*Ibid*.)

The mental state required for implied malice murder—which also suffices to deny a section 1170.95 petition under the amended section 188 (see *People v. Soto* (2020) 51 Cal.App.5th 1043, 1057, review granted Sept. 23, 2020, S263939; *People v. Clements*, *supra*, 60 Cal.App.5th at p. 612)—represents a lower standard than intent to kill. (*People v. Swain* (1996) 12 Cal.4th 593, 602; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1379 ["the specific intent necessary for conviction of an aider and abettor in a murder would not be the specific intent to kill, but the intent to 'encourage and bring about conduct that is criminal'"].) Implied malice murder requires knowledge that conduct endangers the life of another and a conscious disregard for life. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

Under the direct aiding and abetting theory, an aider and abettor's mental state must be at least that required of the direct perpetrator. "'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." [Citation.]'" (*People v. McCoy*, *supra*, 25 Cal.4th at p. 1118.) It follows that to aid and abet an implied malice murder, the direct aider and abettor must intentionally commit, encourage, or facilitate life-endangering conduct with knowledge of the perpetrator's purpose and conscious disregard for life. (*Id.* at p. 1118 & fn. 1.)

2. *Analysis*

Here, as detailed more fully above, the evidence showed that during the Home Bank robbery, defendant and codefendant Key struggled with Corona, and Key yelled out to get Corona off of her, or she would "'pop'" him. (*Key*, *supra*, B105415, at p. 6.)

22

Viewing the evidence in the light most favorable to the judgment, there was substantial evidence from which the trial court could conclude that defendant acted with intent to kill as a direct aider and abettor.  Reasonable inferences could be drawn that Key intended to not just shoot, but kill Corona, and that defendant knew that she intended to do so.  Therefore, the trial court's finding that defendant was ineligible for resentencing because he had the intent to kill was proper.

These same reasons support a finding that defendant acted with implied malice.  That is, the facts detailed above constitute substantial evidence from which a trier of fact could reasonably infer that defendant knew that his conduct and the conduct of Key in struggling with Corona, an armed security guard at a bank during a robbery of that bank, was life-endangering; that defendant engaged in that life-endangering conduct; and that defendant acted in conscious disregard of Corona's life.  Thus, the trial court's finding that defendant was ineligible for resentencing was also supported by substantial evidence that he acted with implied malice.

# DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT